THE ST. JOHNS.

THE FERN HOLME.

RITCHIE *v.* THE ST. JOHNS. BROOKS *et al. v.* RITCHIE *et al.*

*(District Court, D. Massachusetts. April 21, 1888.)*

COLLISION—BETWEEN STEAM AND SAIL—CHANGING COURSE UNNECESSARILY.
   Where a collision occurs between a steamer and schooner on account of the
   schooner's violation of the sailing rules, in changing her course from star-
   board to port, and then back again to starboard. without any excuse arising
   out of the exigencies of navigation, and no negligence is shown on the steam-
   er's part, the schooner is liable for the resulting damages.

In Admiralty.   Cross-libels for a collision between the steamer Fern
Holme and the schooner St. Johns.

*Butler, Stillman & Hubbard,* for the Ferne Holme.

*F. Dodge,* for the St. Johns.

NELSON, J.   This collision occurred on the evening of 17th March, 1887,
about seven miles to the eastward of Sandy Hook light-ship.   The Fern
Holme, a large iron steam-ship, was approaching New York bay on a
voyage from England, making a W. ½ S. course at a speed of nine knots.
The St. Johns, a three-masted schooner of about 400 tons, was bound on a
voyage to the eastward, with a cargo of coal, being on the port tack with the
wind N. W., her course due east, or nearly opposite to that of the steamer,
and her speed about six knots.   In the collision the jib-boom and bowsprit
of the schooner struck the steamer on the starboard bow.   The case turns
mainly on the testimony given by the master of the Fern Holme, and by
the second mate of the St. Johns, who were the officers in charge of their
respective vessels at the time of the accident.   The testimony of the master
of the Fern Holme was, in substance, that, observing from his station on
the bridge the red light of the approaching vessel bearing half a point on
his starboard bow, he ordered his wheel to be ported, to pass the schooner
on her port side; but before the order could be executed, the schooner
shut in her red light and showed her green light, being then about half
a mile distant and the light still bearing over his starboard bow.   On
seeing the green light, he ordered the wheel hard to starboard, to pass
on the starboard side, but as the steamer fell off to port under the star-
board helm, the schooner shut in her green light and showed her red
light again.   He then reversed his engine, but it was too late, and the
schooner bore down on the steamer, and the collision happened.   Tak-
ing this to be a true account of the accident, it is clear that the collision
was owing solely to the violation of the sailing rules by the schooner, in
changing her course, first from starboard to port, and then back again to
starboard.   Nothing appears here to show any negligence or misconduct
on the part of the steamer.   It is argued that even on this showing she
should have reversed her engines when the green light was shown.   But

it was then necessary that she should fall off rapidly to avoid running the schooner down, and this the reversing of the engines would have prevented. To this may be added also that if she was wrong in not reversing, the fault arose through an error of judgment in a sudden and unexpected emergency caused wholly by the misconduct of the schooner. For this reason also the error would be excusable.

The second mate of the St. Johns testified that the steamer's mast-head light was first discovered a little on his port or weather bow, and presently her red light was seen in the same direction; that when the two vessels were within a few lengths of each other, the steamer's red light still showing over his port bow, he ordered his helm to port; that as the schooner fell off under the port helm, the steamer made a sudden change to port, showing her green light, and heading directly across the schooner's bow from port to starboard. He denies that he made any other change of course, but admits that the order to port was given before the steamer turned to port, and at a moment when his own red light could alone have been visible to the steamer.

After full consideration of all the evidence in the case, I have come to the conclusion that the account which the master of the Fern Holme gives of this accident is substantially correct. I therefore find the principal question of fact in dispute—which was whether the St. Johns changed her course from starboard to port—against the schooner. I believe the statements of the men on the steamer, that they saw the schooner's green light over the starboard bow. The second mate admits the change from port to starboard, but defends it by claiming that the steamer was then in dangerous proximity. But so long as the port lights of the two vessels were towards each other, there was no dangerous proximity, and no ground for fearing or anticipating collision. The act looks like an attempt to dictate to the steamer on which side she should pass. As he committed this mistake, it is perhaps easier to believe he also committed the more serious one of permitting his vessel to come up so near to the wind as to open her green light to the approaching steamer. Whether this was the result of yawing and bad steering,—as there is some ground for concluding,—or of design, it is unnecessary to inquire. There is no pretense that the schooner was then *in extremis*. The fact itself is sufficiently proved, and is decisive; and as no explanation or excuse arising out of the exigencies of navigation or overwhelming necessity is shown, and as it was the cause of the accident, it is enough to condemn the schooner for the consequences of the collision. In the case of the Ferne Holme against the St. Johns, an interlocutory decree is to be entered for the libelants; the cross-libel of the St. Johns against the Fern Holme is dismissed, with costs. So ordered.